UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                    CRIMINAL NO. 15-cr-20037

v.                                 HON. SEAN F. COX

DENNIS GEORGE DEHATE,

            Defendant.

_____/

## Government's Sentencing Memorandum

A jury of his peers found Defendant Dennis George DeHate guilty of coercing and enticing a thirteen year old child to make him child pornography, as well as receiving and possessing child pornography, and transferring obscene material to a minor. For the reasons stated in this memorandum, the government believes a sentence of **405 months'** imprisonment is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I.     Facts and Procedural History

### A.     The child known as MV-1

MV-1, born in 2000, lived with her mother and father most of her life. Between 2005 and 2009, she lived abroad in Singapore and Hong Kong because her father's work took them there.  When they returned to the United States, MV-1 began having difficulty adjusting to her new surroundings.  Compounding that, she suffered from severe allergies, causing her skin to become patchy and discolored and her hair to fall out.  The children at school called her "Dalmatian."  They bullied her.  As her father described her, by the time MV-1 entered junior high, her emotional well-being was "fragile."  This is the child that the defendant met online in June 2014: emotionally weak, self-conscious, and suicidal.

### B.     Newark, New Jersey Investigation

On August 20, 2014, MV-1's father visited FBI Newark to provide information regarding his minor daughter (MV-1) and her communications with an adult male using the KIK cellular phone application.  In August of 2014, MV-1 was 13 years old.  The father went through MV-1's cellular phone and found numerous communications, including sexually explicit photographs and videos, exchanged between MV-1 and KIK user DEN D/MOPARMAN51, who was later identified as the defendant.

He gave his consent for FBI agents to examine MV-1's cellular phone.  FBI agents observed communications between MV-1 and the defendant starting on or about July 17, 2014.   The following are descriptions of some communications between MV-1 and the defendant:

    a.  On July 18, 2014 at 12:10 a.m., the defendant sent an explicit photograph of his testicles along with the message:  "My balls just for you…I manscaped today and I nicked myself with the trimmer…It didn't hurt buy boy did it bleed."  He asked MV-1: "Do you think you could make me a vidio of you pleasureing your self for me Baby?"

    b.  On July 19, 2014, the defendant asked MV-1 if she had KIK video.  Later the same day, MV-1 sent a topless photograph of herself to the defendant.  MV-1 asked: "Daddy I look horrible. Do I really have to make a vid tonight."

    c.  That same day, the defendant asked MV-1 to hear her voice and wrote, "…when we meet I will hear it…"  MV-1 then sent a video of herself saying, "I love you Daddy."

d.  Also on July 19, 2014, the defendant sent MV-1 a sexually explicit photograph of a female's vagina with the following text, "This girl says her pussy is loose and ugly…I want yiur opinion."

e.  At approximately 11:14 p.m. on the same date, MV-1 sent a video to the defendant that depicted herself masturbating.  In the video, MV-1's genitals are visible.  The defendant responded by asking MV-1 for a longer video.  He also stated that if MV-1 "used lube," with practice, she could "fist" herself.

f.  On July 20, 2014, MV-1 sent a KIK message to the defendant that stated:  "I got over $300 for graduating 8th grade."

Three videos were recovered from MV-1's cellular phone that were sent by the defendant.  The videos show a heavy-set, white, adult male that appears to be approximately 50 years old.  The male's face is visible in all three videos and appears to be the same individual.  One of the videos shows the defendant masturbating until he ejaculates.

## C.   Clinton Township, Michigan

On January 6, 2015, S/A Danielle Christenson, FBI, obtained a federal search warrant for DeHate's residence in Sterling Heights, Michigan.  On January 13, 2015, the defendant was arrested by FBI agents and task force officers.  The

defendant told agents he used KIK and Experience Project online to communicate with mostly females and used the screen name MOPARMAN51.

The defendant confessed that in approximately July 2014, he met MV-1 on Experience Project, an online social media website that allows for public postings, private messaging, and exchange of images and videos.   They utilized the Experience Project's communication tools to talk online.   Eventually, they continued their communications on KIK Messenger.   When the defendant started communicating with MV-1, he said he believed MV-1 to be approximately 14 or 15 years old.  The defendant told MV-1 his actual age.

The defendant said he and MV-1 communicated about topics sexual in nature.  He said he sent "a penis shot" photograph of himself to MV-1.  Eventually, the defendant said he "maybe masturbated" for MV-1 and sent a video of this sexual act to MV-1.   He also stated that he "may have" instructed MV-1 to make sexual videos of herself for him, however, he was not positive.   Although the defendant knew MV-1 was underage, he said he did not tell MV-1 to stop sending nude photos or sexual videos because he did not want to upset or hurt MV-1's feelings.

### D.    Forensic review of the media concerning MV-1

During the investigation of this case, the government obtained contents of the defendant's Experience Project accounts.  In them, the conversations between

MV-1 and the defendant, both before their KIK account conversations, and after their KIK account conversations, were located.  On the first day they "met" online, MV-1 told the defendant she was 13 years old.  During the conversations, the defendant encouraged MV-1 to engage in self-harm such as clamping her nipples with clothespins to simulate cutting herself.  He also gave her diet advice.

Though the defendant confessed that MV-1 made him 2–3 masturbation videos, the government was only were able to recover one video from the defendant's phone.  In the video, she is masturbating for him, and inserts three fingers in her vagina.  His response?  "With some lube and a little practice, you can fist yourself."

Agents also recovered between 8–12 images of MV-1 that qualify as child pornography.  In the images, which are close-up shots, MV-1 is seen with a full-size flashlight (think black/brown flashlight with bright yellow on/off switch and bright yellow rim around the light, inserted almost all the way into her vagina.

**E.      Other evidence of a sexual interest in children**

In the defendant's phone, law enforcement located additional KIK conversations with a girl named "Amy," who indicated to the defendant that she was 16 years old.  From the context of the chats, it appears that prior, additional conversations occurred between the two, though the cell phone evidence recovered chats between November 20, 2014, and January 12, 2015.  The conversations are

sexually graphic in nature, and take on the same tone as defendant's conversations with MV-1.  For example, "Amy," like MV-1, appears to have issues with anxiety and depression.  "Amy," like MV-1, calls the defendant "Daddy."  The defendant tries to offer her advice on dating, and makes commentary to her in the form of advice and counsel on a variety of issues, just like with MV-1.  The defendant also acknowledges "Amy's" age:

**11/28/2014 12:03:35 AM:**

Defendant:   And I want you to remember you are young . . . Im 50 and I have had my heart broken in just this last year

-------------------------------------------------------------------------------------

**1/06/2015 5:12:18 PM:**

Defendant:          Im sorry baby . . . But remember you are young and will have many more loves . . .

Conversations between "Amy" and the defendant center on sexually explicit talk. The defendant asks "Amy" if she wants to see a nude photo of an adult female he is chatting with online.  He asks "Amy" if she's "ever tried a woman."  Then, the chats become even more graphic.  Similar to his conversations with MV-1, the defendant also instructs "Amy" on the preparing herself for anal intercourse:

**1/12/2015 12:18:57 AM:**

Defendant:   Do you like him rubbing the other hole?

**1/12/2015 12:28:35 AM:**

Defendant:  Try it yourself first with lube . . .Go slow and be
relaxed.

**1/12/2015 12:30:19 AM:**

Defendant:  Go slow. . . Wait for the muscle to relax . . . Then it
wont  hurt

**1/12/2015 12:42:07 AM:**

Defendant:  And you can move up to a carrot or something
bigger . . .         But let it get warm . . . Cold will
make it tighten up and     hurt . . .

After further discussion, the defendant asks "Amy" for photos of her engaging in

anal sex: "I wouldnt mind some pics tho."  When she says that she will comply

with sending him video and pictures of herself engaging in sexual contact, the

following exchange ensues:

**1/12/2015 1:07:23 AM:**

Defendant:  thank you Baby . . .I love you.

"Amy":      Your welcome daddy and I love you too.

Defendant:  You will always be my baby.

Defendant:  I found out the age of consent here in
Michigan is 16 now . . . We
could have sex legally.

"Amy":      Youl always be my daddy too and I know daddy.

The government has not yet identified "Amy," but found her online presence, and believes her to be underage.  Regardless, the chats show that defendant <u>believed</u> her to be underage.

But the defendant's knowledge of "Amy" goes beyond just text messages. During the defendant's interview the day of his arrest, he confessed that he was talking online with two underage girls: MV-1 and "Amy," a 16 year old girl from Scotland.  And not only did the defendant confess to his online communications with "Amy" to law enforcement, but the defendant also discussed his "relationship" with "Amy" in his conversations with MV-1, explaining to MV-1 that, "You are not the only young friend I have . . .I [h]ave a 16 yo friend in scottland . . ."  In another chat, the defendant explained to MV-1 that:

> [I] have a friend in scotland who is 16 . . .She wanted me to be her dom daddy and she would be my baby . . .she disrespected me and refused to do her punishment . . .stand in the corner for 10 min and repeat she was sorry she disres[p]ected me..on video to prove it….She had lied to me so I told her she had to prove it…dose that sound to harsh for you?

> She wanted me to coller her as mine….

> With her we started out sexting then she brought it up…Then I found out how young she was…What are you looking for in a Daddy baby relationship?

(Experience Project Chat, 6/07/2014).

### F.    Experience Project chats with others

In addition to the text messages between the defendant and "Amy," the defendant held two separate accounts with the online social networking website Experience Project.  As "Moparman51," the defendant appeared to be himself: a 50 year old man.  As "k9forfun," the defendant posed as a barely 18 years old girl nicknamed "Andy."   The main focus of the "k9forfun" account appears to be bestiality and incest.  In many of the chats, "Andy" takes on a persona of a girl madly in love with her father.  "Andy" tells stories of her sexual desire for her father that began in childhood, and "her" chats culminate to graphic stories of sexual encounters with him.  Notably, "Andy" also happens to be the nickname of defendant's daughter.[1]

Some of these examples appear below (spelling errors in original):

**08.18.2014**

*(Defendant engages in conversation with a man who says he has a 16 year old son and is sexually active with the son, and their dog Max)*

Defendant:   Do you have any [pics] of you and max [the
             dog] . . .Or   your son?
-------------------------------------------------------------------------------------
**09.13.2014**

Defendant:   How old and how many do you have? . . . I
             ment your    daughters . . .

---

[1] The Defendant also uses other identifiers that suggest he is posing as his own daughter online, including using her full name, month of birth, and other personal descriptions.

Responder:  12 19

Defendant:  if your close to them mention K9 stuff and say
             you think    its hot . . They may
             think so to then you get to watch . .
             .and help maybe . . .

Defendant:  Just wondering if you do every thing with both
             of them . . . Is your 12 yo ready for
             everything . . . .
. . .

Defendant:  Are either of your Daughters Bi like me?

Defendant:  [12 year old girl] has beautiful lips I would not
             mind                 kissing . . . I would love to
             kiss those lipps. . . .bet she      has a
             sweet tasting pussy to . . . .
---------------------------------------------------------------------------------

**10/04/2014**

Defendant:  My Dad told me I was molested as a little girl .
             . . Im  going to write it up and post
             it [online] as an experience.                    . .

*(The same  day,  the  administrator  from  Experience  Project  sent
defendant  a  message  stating  that  his  story,  "Molested  As  A  Child,"
was removed because it violated community guidelines).*
---------------------------------------------------------------------------------

**10/09/2014**

Defendant:  So what do you do when you get really horney . . .
             .Dildo?

Responder:  No I'm 16.  Just play with myself.
---------------------------------------------------------------------------------

**11/10/2014**

Defendant:  How old are you? I turned 18 in august

Responder:  I'm. 17

Defendant:  So what are you wanting to try [sexually]?
------------------------------------------------------------------------------------

**11/16/2014**

Defendant:  I have started an incestual relationship with
my dad and I just finished a
69with my dog about 30 min ago . . .

 . . .

Defendant:  I don't see a big problem with incest . . .Or
even young sex . . .But not with any force or
molesting. . . That's just  wrong . .
Conentiual   sex is fine but they have to know whats
going on  .   . .i know that even feels strange to say but I
know girls that had sex at 10 and are just fine and
well adjusted . . .
------------------------------------------------------------------------------------

**11/17/2014**

Defendant:  How old are you really . . .i'm 18 . .

Responder:  I'm 14

Defendant:  So you honestly would like to be raped?
------------------------------------------------------------------------------------

**12/03/2014**

Defendant:  I turned 18 back in august . . . how old are you?

Responder:  16

Defendant:  I can talk you through it . . I try to be a good
ambasidor   for K9 loveing . . .i think a lot
more women do it than will admit it. . . .

-------------------------------------------------------------------------------
**12/24/2014**

Defendant:   I have my younger cousin staying in my room with me
and I have to get up early

Responder:   how old is she?

Defendant:   14 . . .Very religious
 . . .

Defendant:   So how old are you . . .Im 18

Responder:   . . .im 12
. . .

Defendant:   So do you like boys . . .Girls. . . or both?

In a series of messages dated December 25, 2014, the defendant tells multiple individuals that the night before, "she" (posing as "Andy") had a sexual encounter with the 14 year old cousin (mentioned above) and the family dog:  "I caught my 14 year old cousin letting my dog lick her while she was strokeing him . . .by morning she had been mounted and I had eaten her pussy while she sucked him . ."

The defendant did not limit his talk regarding children to just the "K9forfun" profile.  On his moparman51 account, he expressed an interest in children as well:

**05/12/2014**

Defendant:   To be honest the thought of teaching a willing
young girl   turns me on a little also…but the
thought of jail would stop me…but if the
mother was there and helping I would but
never in secrecy..That is what messes things
up….Do you let her know about your k9 stuff?

. . .

Defendant:   I have Dreamed of doing a mom daughter hook up . . .i
             never thought of that young [7 years old] but yes I could
             be talked into it….Would I be out of line if I wanted your
             Dog to mount me?

. . .

Defendant:   I wouldn't want to hurt her but if she was ready it would
             be a honor to make your fantacy come true…Be honest
             have you played with her?

. . .

Defendant: I mean we don't know each other much and I defenetly
           don't want to meet Chris Hanson from abc news

. . .

Defendant:   has she done before at all? I feel a girls first time should
             be gental and loving. . . Something she will remember
             with fondness for the rest of her life . .

## G.    Trial

The defendant proceeded to a jury trial on January 12, 2016.  While he
called no witnesses, his defense—as put in through opening/closing and cross-
exam, was that the defendant didn't know who he was talking to on the KIK
messenger.  He agreed that he was chatting with MV-1 on the Experience Project,
but he claimed he had no idea who was sending him child porn on KIK.

But  MV-1 sent a  picture of her face to the defendant in Experience Project,
then sent him a KIK video of her face, saying "I love you Daddy" before she
transmitted the charged child pornography video.  Moreover, in reading through

the chat logs (there were 500 chats in three day period alone), it is obvious that he knew it was MV-1 on the KIK chats. And, he confessed.

The trial lasted four days. MV-1's father was called to testify. He was, understandably, upset to have to come to Detroit and sit in federal court for two days, then testify about his daughter.[2] He had to explain to the jury that MV-1 suffered from emotional problems, that she was "fragile," and bullied at school. Moreover, he had to see the man that coerced his daughter into sending child pornography. And, he had to be subject to cross-examination on areas such as what he may or may not have done to properly preserve evidence on the phone, what other things she was doing online, and how he maintained his household rules. After a week-long jury trial, the jury returned verdicts of guilty after a very short period of deliberations.

The presentence report calculated a guideline range of 324–405 months. The defendant filed thirty (30) objections to the PSR. These objections included blatant denials of the defendant's conduct, including that he never made any admissions to law enforcement. The government responded to the objections directly to the probation department.

This Court set sentencing for May 18, 2016, at 2:00 p.m.

_____

[2] He also intends on attending the sentencing hearing on May 18, 2016, and plans to make a statement to this Court, pursuant to the Crime Victims' Rights Act.

## II.     The factors under 18 U.S.C. § 3553(a) warrant a 405 month sentence.

### A.     The nature and circumstances of the offense

This defendant repeatedly took advantage of MV-1's vulnerabilities, including her young age, and enticed her into a twisted, online sexual relationship. The defendant convinced MV-1 to produce child pornography images and videos for him.  Whether those videos and images were distributed to others remains to be seen. At this time, the government does not have evidence that the images/videos were distributed to others, but the defendant's media will be sent to the National Center for Missing and Exploited Children to be kept on file.  It may be months, or even years from now, that her image/video might show up in another child pornography investigation.  It is impossible to know at this point, whether other people currently possess this material.

### B.     History and characteristics of the defendant

This defendant's history and characteristics support a lengthy custodial sentence.  Perhaps the biggest factors for the court's consideration include his lack of remorse for the crime, his actions with MV-1, and his strong sexual interest in children.

### (1)     Lack of remorse

Every criminal defendant has a constitutional right to put the government to its burden at trial.  To be clear: the government is not arguing that the defendant

lacks remorse because he decided to go to trial.  The defendant shows a total lack of remorse for his conduct because, throughout the trial, and into even in his objections to the presentence report, he has presented to the court nothing but lies. To this day, he claims: no videos were found on his phone (objection #5); and he never made any admissions to law enforcement (objection #6).

### (2)    The defendant's actions with MV-1

The defendant's behavior toward MV-1 is telling.  He made her call him "Daddy," to put himself in a position of authority to her.  He sent her sexually explicit images in order to condition her to seeing them, and then asked for the same in return.  He groomed her by telling her how much he loved her, tricking her into believing that they were in a physical, emotional, and sexual relationship of equals.  This defendant seized on MV-1's fragile mental state.  Every time MV-1 reached out to him for love, attention, or affection, he responded to her with something sexual that would entertain himself.  For example, when MV-1 says she's depressed and wants to self-harm, he suggests sexual activity (activity that he later acknowledged to her was for sexual pleasure).  When MV-1 reacts negatively to the defendant sending her a picture of a female vagina, he wants to know if she is sexually interested in girls.  And when she confides in him that she wants to die, he suggests that he could choke her to death with his penis.  All of these actions

show a sexual predator: one who will lie, manipulate, and steal a child's innocence for his own sexual pleasure.

### (3)    The defendant's sexual interest in children

The defendant's behavior and sexual interest in MV-1 is not simply a "one-off" in his life.  The universe of information that the government has on this defendant spans the course of approximately a year, and consists only of certain electronic history: limited phone information, and online accounts from the Experience Project.  But even in the small amount of data collected, the defendant has demonstrated a strong sexual interest in children.  His disturbing chats online, posing as his own daughter who is having a sexual relation with her father (meaning, him), can only be read as a long-standing sexual interest in her.

His modus operandi is not to look on the internet for child pornography to download to his computer. No; his sexual interest concerns finding children online to directly communicate his sexual desires.  And if the children are too young to be online, the defendant took no issue with trying to convince the child's parent to give him access.  This sexual interest in children, coupled with lack of remorse for his actions and denial of his behavior, should cause grave concern to this Court.

### C.    Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

The damage done to MV-1 is permanent.  Undoubtedly, this is a serious offense.  A sentence that would adequately reflect the seriousness of the offense

would recognize that the defendant produced images and videos that are "intrinsically related to the sexual abuse of children . . . . a permanent record of the children's participation." *New York v. Ferber*, 458 U.S. 747, 759 (1982). This is precisely why Congress has mandated a lengthy custodial punishment in cases like these.

Additionally, Congress placed steep penalties for online enticement, with a statutory maximum of life imprisonment, because of the seriousness of these crimes. This defendant committed serious crimes. And a lengthy custodial sentence will promote respect for the law, and offer a just punishment.

### D.    Adequate deterrence and protection of the public

Deterrence is a key component in discouraging future criminal behavior and protecting the public. This defendant acted in accordance with his sexual desires through his repeated victimization of MV-1. He needs to be deterred. Moreover, there is also a general deterrence factor that must be addressed. Congress envisioned that individuals like the defendant, who cannot control their sexual desire for children, ought to be incarcerated for extended periods of time to protect society's children. The government agrees.

**E.**     **Kinds of sentences available and the need to avoid unwarranted sentencing disparities.**

A guideline sentence in this case fits comfortably within the range of sentences that similarly situated defendants receive.  Indeed, as discussed above, the guideline range is the starting point for determining a defendant's sentence.

**F.**     **Restitution requests.**

There is a restitution request from MV-1.  As of the filing of this sentencing memorandum, the government is still waiting for information from MV-1's current therapist.  Because The Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, allows for restitution requests up to 90 days post-sentencing, the government respectfully requests this Court leave the restitution order open until such time that the request documentation has been received.  The government intends on filing a separate motion for restitution as soon as the paperwork arrives.

### III.  Conclusion

The government recommends a sentence of **405 months**' imprisonment.

<div style="margin-left: 40%;">

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

<u>s/ *Margaret M. Smith*</u>
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

</div>

Dated:  May 11, 2016

**Certificate of Service**

I hereby certify that on May 11, 2016, I electronically filed the Sentencing

Memorandum for the United States with the Clerk of the Court of the Eastern

District of Michigan using the ECF system which will send notification of such

filing to the following via electronic mail:

<div align="center">

Mitchell H. Nelson
Attorney for Defendant
mitcham@mac.com

</div>

<div align="center">

s/ *Margaret M. Smith*
MARGARET M. SMITH (P71413)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9135
E-Mail: margaret.smith@usdoj.gov

</div>